# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT COURT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| **CHRISTOPHER BARACKMAN,**<br><br>**Plaintiff,**<br><br>v.<br><br>**CBD AMERICAN SHAMAN, LLC, et al.,**<br><br>**Defendants.** | Case No. 4:20-cv-00416-FJG |

## DEFENDANT EVOLUTION E-LIQUIDS, LLC'S
## SUGGESTIONS IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Defendant Evolution E-Liquids, LLC ("Evolution") submits the following suggestions in opposition to Plaintiff Christopher Barackman's Motion to Remand to State Court (Doc. #5), filed June 16, 2020:

### Introduction

Plaintiff alleges that he purchased and ingested a cannabidiol ("CBD") product containing tetrahydrocannabinol ("THC"), which purportedly was illegal, caused him to fail a drug test and resulted in termination of his employment. Plaintiff sues under the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.010 *et seq.*

Plaintiff alleges that Evolution manufactured and labeled the CBD product he purchased. In addition to Evolution, CBD American Shaman, LLC ("CBD American") and Rebecca Perdieu are named defendants in the action. Plaintiff alleges that CBD American and Perdieu made false advertisements and point-of-sale misrepresentations about the CBD product Plaintiff purchased (*see* Pet., Doc. #1-1, ¶¶ 10-13, 15-20) , but his claims against Evolution are much narrower—

Plaintiff alleges that Evolution provided a label for the product omitting (1) the percentage of THC in the product; (2) the product's potential negative effects on a drug test; and (3) the legality of the product in all 50 states (*see id.* ¶ 14).

As to the legality of the CBD product, Plaintiff's claim hinges on a core allegation that the hemp-derived CBD product he purchased was illegal under the federal Controlled Substances Act at the time he allegedly bought the product in February 2017. (*See id.* ¶¶ 8-9.) Under Plaintiff's theory, CBD products containing trace amounts of THC (like the product he purchased) were not legalized until the passage of the Agriculture Improvement Act of 2018 ("2018 Farm Bill"), which defined marijuana to exclude low-THC, hemp-derived products. *See* 21 U.S.C. § 802(16)(B)((i) ("The term 'marihuana' does not include . . . hemp, as defined in section 1639o of Title 7"); 7 U.S.C. § 1639(1) ("The term 'hemp' means the plant Cannabis sativa L. and any part of that plant . . . with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis."); *see also* Agriculture Improvement Act of 2018, Pub. L. No. 115-334, §§ 10113, 12619, 132 Stat. 4490, 4908, 5018 (2018). Other than the fact that his purchase pre-dated the 2018 Farm Bill, Plaintiff asserts no basis on which the purchased CBD product could have been illegal. Without proving that the product was illegal at the time of his purchase under the Controlled Substances Act, Plaintiff cannot prevail on his claim that Evolution violated the MMPA by omitting information about the product's illegality from the product label.

The substantial federal issue in the claim against Evolution supports federal jurisdiction over the claim under Section 1331, and Plaintiff does not dispute that the Court can exercise supplemental jurisdiction over the remaining claims. (*See* Notice of Removal, Doc. #1, at 4, ¶ 8.) Accordingly, Evolution requests that the Court assume jurisdiction of the matter and deny Plaintiff's motion to remand.

## Argument and Authorities

Section 1331 provides that federal district courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Even when a plaintiff brings a claim under state law, the matter "might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 13 (1983). "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised; (2) actually disputed; (3) substantial; and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). "The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues" *Grable & Sons Metal Prods., Inc. v. Duarte Eng'g & Mfg.*, 545 U.S. 308, 308 (2005).

Here, all of the required elements for exercise of federal jurisdiction over Plaintiff's claim against Evolution are satisfied.

## I. Plaintiff's Claim Against Evolution Necessarily Raises a Federal Issue

On its face, as outlined in the introduction above, the Petition clearly asserts a claim against Evolution that necessarily raises an issue of federal law regarding interpretation and application of the Controlled Substances Act and whether the low-THC, hemp-derived CBD product at issue in this case is illegal under that statute. The Petition specifically alleges the product's illegality under the Controlled Substances Act (Pet., Doc. #1-1, ¶¶ 8-8), and without proving that allegation, Plaintiff cannot establish the essential element of his MMPA claim that Evolution engaged in unlawful

3

Case 4:20-cv-00416-FJG   Document 11   Filed 07/07/20   Page 3 of 15

practices by omitting material information from the product label about the legality (or illegality) of the product Plaintiff purchased. *See* Mo. Rev. Stat. § 407.020.1.

Contrary to Plaintiff's argument, it is irrelevant that Plaintiff asserts a claim under Missouri law because "a state law cause of action may arise under federal law where 'the vindication of a right under state law necessarily turns on some construction of federal law." *Dooley v. Medtronic, Inc.*, 39 F. Supp. 3d 973, 982 (W.D. Tenn. 2014) (quoting *Franchise Tax Bd.*, 463 U.S. at 9). In that situation, "state law supplies the cause of action but federal courts have jurisdiction under § 1331 because 'the plaintiff's right to relief necessary depends on resolution of a substantial question of federal law.'" *Burrell v. Bayer Corp.*, 918 F.3d 372, 380 (4th Cir. 2019) (quoting *Franchise Tax Bd.*, 463 U.S. at 28).

*Dooley* is instructive of the determination here. In that case, the court found a substantial federal question embedded in the plaintiff's common law consumer fraud claims because plaintiff alleged that the product at issue (a medical device) was illegal under federal law and he could not prevail on his claims without proving defendants had violated federal law. *Dooley*, 39 F. Supp. 3d at 984-85. As in *Dooley*, Plaintiff in this case alleges that the product allegedly manufactured and labeled by Evolution was illegal under federal law and he cannot prevail on that claim without proving his allegation in that regard.

The facts in this case are also similar to *Grable*, where the Supreme Court found that federal jurisdiction was proper in a case where the plaintiff asserted a quiet title claim under Michigan law arguing superior title to the disputed property based on "a failure by the IRS to give it adequate notice [of seizure], as defined by federal law." *Grable*, 545 U.S. at 314-15. That claim arose under federal law because "notice within the meaning of the federal statute [was] an essential element of [the] quiet title claim." *Id.* at 315. Here, the legality of CBD products under the Controlled

Substances Act is similarly an essential element of Plaintiff's claim that Evolution engaged in unlawful practices under the MMPA by omitting information from the product label about the legality of the product Plaintiff purchased.

Plaintiff argues that this case is like *Ellis v. RK Endeavors Springfield, LLC*, No. 6:19-03377-CV-SRB, 2020 WL 50719 (W.D. Mo. Jan. 3, 2020), where another judge of this court granted a motion to remand in a case involving CBD products. The facts of the two cases are very different, however. Removal in *Ellis* was based on the arguable impairment of interstate commerce of hemp products created by plaintiff's theory of liability, but the court held that a necessary issue of federal law was not presented because "[n]one of Plaintiff's claims raise any violation of federal law, argue that the Farm Bills of 2014 or 2018 were violated, or even assert that interstate transportation laws were violated." *Id.* at *1. Unlike *Ellis*, the claim against Evolution in this case actually is predicated on a specific violation of federal law—i.e., the illegal sale of a CBD product under the Controlled Substances Act.

Plaintiff also argues that his claim does not necessarily involve an issue of federal law because he alleges alternative theories of liability under the MMPA. As support for this argument, Plaintiff cites *Central Iowa Power Co-op v. Midwest Independent Transmission System Operator, Inc.*, 561 F.3d 904 (8th Cir. 2009), but that case is inapposite because it did not involve alternative theories of liability; the Eighth Circuit merely found that the plaintiffs' *implied* contract claim did not necessarily raise a federal issue because it could succeed without reference to an independent written agreement having same legal force as a federal regulation. *Id.* at 913-14. Plaintiff has not cited any controlling law from the Eighth Circuit supporting his argument that a federal issue is not necessarily raised by his claim simply because he pleads alternative theories of liability. In fact, the Eighth Circuit in *Central Iowa Power* specifically noted that "[i]f [the plaintiff's] right to relief

5

necessarily depends on the resolution of a disputed question of federal law, then the district court correctly denie[s] [a] motion to remand." *Id.* at 912.

Much of Plaintiff's argument on this point is misguided and fails to distinguish his claim against Evolution from his claims against the other defendants. As indicated above, Plaintiff alleges advertising and point-of-sale misrepresentations involving CBD American and Perdieu, but his claim against Evolution is limited to alleged omissions on the product label. (*Compare* Pet., Doc. #1-1, ¶¶ 10-13, 15-20, *with id.* ¶ 14.) Whether Plaintiff could establish his misrepresentation claims without reference to the Controlled Substances Act is irrelevant in deciding whether the claims against Evolution arise under federal law because those misrepresentations claims are not alleged against Evolution.

To the extent Plaintiff obscures the fundamental federal issue in the claim against Evolution with purported alternative theories of omission, the Court should ignore those alternative theories. *See Phipps v. FDIC*, 417 F.3d 1006, 1011 (8th Cir. 2005) ("[W]e are required to look beyond the plaintiffs' artful attempts to characterize their claims to avoid federal jurisdiction."); *see also Pagidas v. Buster*, No. 16-390S, 2016 WL 11545018, at *4 (D.R.I. Nov. 16, 2016) ("In applying the *Gunn* test. . . , this Court need not restrict itself to the words that [plaintiff] chose to use in her pleading. Rather, the Court may, indeed must, look beyond the face of the complaint . . . ."). In particular, the Petition alleges that Evolution omitted from the product label information about the percentage of THC in the CBD product Plaintiff purchased and the potential negative effects of that product on drug screenings. (Pet., Doc. #1-1, ¶ 14.) These claims for omission under the MMPA have heightened requirements compared to misrepresentation claims, and there is no allegation or indication in this case that the alleged omission of this information on the product label was material in Plaintiff's purchase of the CBD product. *See Budach v. NIBCO, Inc.*, No. 2:14-cv-

6

04324, 2015 WL 3853298, at *8 (W.D. Mo. June 22, 2015) ("[U]nlike a misrepresentation claim under the MMPA, a claim for omission of a material fact under the MMPA has a scienter requirement. That is, a plaintiff must show the defendant failed to disclose material facts that were "known to him/her, or upon reasonable inquiry would [have been] known to him/her.").

In fact, Plaintiff has already admitted in his deposition that never read the product label, deferred completely to the sales associate at the point of sale for his knowledge of the product, was told by the sales associate that the product contained THC, and was advised by the sales associate that he would not fail a drug test while using the product. (*See* Christopher Barackman Deposition, attached as **EXHIBIT 1**, at 102:24-107:3, 113:1-20, 117:21-25, 183:3-184:19, 188:17-190:18, 192:4-20, 193:4-13.) Plaintiff testified that he bought the product specifically based on the affirmative representation that he would not fail a drug test while using the product (*id.* at 102:24-106:8), and it bears repeating that this alleged misrepresentation about drug testing that purportedly influenced Plaintiff's purchase decision is not attributed to Evolution (*see* Pet., Doc. #1-1, ¶¶ 15-20). Under these circumstances, the alleged omissions on the product label regarding THC content and drug testing could not have been material in Plaintiff's purchase of the product, and they are not actionable as alternative theories of liability that would somehow prevent removal of the claim against Evolution that otherwise arises under federal law because it depends on application of the Controlled Substances Act.

Given the nature of the Plaintiff's claim against Evolution and the necessary federal issue apparent on the face of the Petition, the Court should find that the first requirement for federal jurisdiction is satisfied.

## II. The Federal Issue in Plaintiff's Claim Against Evolution is Actually Disputed

Contrary to Plaintiff's assertion, Evolution disagrees with the position that hemp-derived CBD products containing trace amounts of THC were illegal under the Controlled Substances Act prior to the amendments in the 2018 Farm Bill. In *Hemp Industries Association v. Drug Enforcement Agency*, 357 F.3d 1012 (9th Cir. 2004), the Ninth Circuit distinguished "non-psychoactive hemp" derived from industrial hemp plants and containing only trace amounts of naturally occurring THC from "marijuana varieties grown from psychoactive purposes," and held that non-psychoactive hemp is not regulated by the Controlled Substances Act. *Id.* at 1013 n.2 & 1018. In part, the Ninth Circuit held:

> The DEA's Final Rules purport to regulate foodstuffs containing "natural and synthetic THC." And so they can: in keeping with the definitions of drugs controlled under Schedule I of the CSA, the Final Rules can regulate foodstuffs containing natural THC if it is contained within marijuana, and can regulate synthetic THC of any kind. **But [the DEA] cannot regulate naturally-occurring THC not contained within or derived from marijuana—i.e., non-psychoactive hemp products—because non-psychoactive hemp is not included in Schedule I.** The DEA has no authority to regulate drugs that are not scheduled, and it has not followed procedures required to schedule a substance.

*Id.* at 1018.

This decision demonstrates that the CBD product at issue in this case is not regulated by the Controlled Substances Act because it constitutes "non-psychoactive hemp" containing only trace amounts of naturally occurring THC. Any doubt on the issue was put to rest with the passage of the Agriculture Act of 20014 ("2014 Farm Bill") that codified the exclusion of industrial hemp from the Controlled Substances Act, and the Consolidated Appropriations Act of 2016 that prohibited federal enforcement agencies from interfering with industrial hemp under the 2014 Farm

Bill. *United States v. Mallory*, 372 F. Supp. 3d 377, 381-86 (S.D.W.V. 2019) (describing these legislative enactments and concluding: "In light of the language of the 2014 Farm Bill, the Spending Bills, and the legislative history, the Court finds that Congress intended to carve out an exception to the CSA for industrial hemp.").

In light of these authorities, the Court should find that the central issue of Plaintiff's claim against Evolution—that hemp-derived CBD products containing trace amounts of THC were illegal under the Controlled Substances Act when Plaintiff made his purchase in 2017—is actually disputed. The second requirement for federal jurisdiction is easily satisfied.

### III. The Federal Issue in Plaintiff's Claim Against Evolution is Substantial

The parties' dispute regarding interpretation and application of the Controlled Substances Act to hemp-derived CBD products presents a substantial federal issue that warrants the exercise of federal jurisdiction. The *Mallory* case just cited goes into great detail explaining all of the efforts Congress has made to clarify the exclusion of industrial hemp from the Controlled Substances Act and prevent interference with the hemp industry. *Mallory*, 372 F. Supp. 3d at 384 ("The 2014 Farm Bill expressly permits growing, cultivating, and marketing industrial hemp under State pilot programs. When tensions arose between enforcement of the broad language in the CSA and the narrow exception for industrial hemp carved out from the 2014 Farm Bill, Congress reacted by inserting language in the 2016 Spending Bill to bar enforcement agencies from using appropriations 'to prohibit the transportation, processing, sale, or use of industrial hemp that is grown or cultivated in accordance with [the 2014 Farm Bill], within or outside the State in which the industrial hemp is grown or cultivated.'").[1]

---

[1] *See also KAB, LLC v. U.S. Postal Serv.*, No. MLB 18-39, 2018 WL 4913891, at *7 (U.S. Postal Serv. Sept. 21, 2018) ("To summarize, the plain language of the Agriculture Act of 2014 suggests that Congress

9

In *PharmaCann Penn, LLC v. BV Development Superstition RR, LLC*, 318 F. Supp. 3d 708 (E.D. Pa. 2018), the court found that private litigation regarding the legality of a medical marijuana dispensary presented a substantial federal question justifying federal jurisdiction because it implicated ongoing concerns about the growing market for medical marijuana and required application of the Controlled Substances Act to determine legality of the dispensary in dispute. *Id.* at 713. The Court summarized the substantial federal interest as follows:

> [T]he issues at hand counsel in favor of review by a court used to federal drug law and versed in principles of federalism. The immediate law to be applied is the federal Controlled Substances Act. On a deeper level, too, federalism principles lurk in the background of this dispute. If a court were to rule that PharmaCann's dispensary violated federal law, the Supremacy Clause could cast doubt on the validity of dozens of state marijuana schemes. Such a ruling, in other words, would require a court to consider the delicate comity between our federal and state systems. The advantages of hearing this kind of federalism-adjacent dispute in a federal forum, free from the pressures of judicial election politics, are obvious.

*Id.* A virtually identical—and equally substantial—federal interest in this case involving a similar question about the legality of CBD products under the Controlled Substances Act.

The cases cited by Plaintiff recognize that a substantial federal issue will transcend litigation between the parties. *Knox v. Mazuma Credit Union*, No. 15-0288-CV-W-ODS, 2015 WL 3407618, at *3 (W.D. Mo. May 27, 2015). The federal issue here satisfies that standard. Proper

---

sought to permit an experiment into the growth, cultivation, and marketing of a product it now defined as industrial hemp. 7 U.S.C. § 5940. And that it did so to determine whether a market exists for the product free from the restrictions of the CSA. After finding the interpretation of the SOP drafted by certain federal agencies too restrictive, and out of concern that it could interfere with the experiment, Congress further refined the language to encourage the sale and distribution of industrial hemp within and between the various states for a more finite period, also free from the restrictions of the CSA and executive branch control. . . . This explains the additional "clarifying" language adopted in the appropriations bills in fiscal years 2016, 2017, and 2018 that expand the experiment.").

interpretation and application of the Controlled Substances Act, particularly as it relates to industrial hemp and hemp-derived CBD products, is an ongoing concern for Congress as indicated by its repeated legislative efforts on the subject. Adoption of Plaintiff's position would erode Congress' efforts across the board to free CBD products from regulation under the Controlled Substances Act. Even with the amendments in the 2018 Farm Bill that indisputably settle the issue, it is still possible for other individuals to challenge supposedly illegal sales of CBD products prior to the passage of the 2018 Farm Bill; in Missouri, for example, MMPA claims have a five-year statute of limitations,[2] meaning sales of CBD products from 2015 to 2018 remain actionable today. The need to resolve a "serious differentiation" in interpretation of federal law and the influence this case might have in "subsequent litigation on similar issues" demonstrates the existence of a substantial federal issue. *Dooley*, 39 F. Supp. 3d at 986.

Plaintiff argues that there is not a substantial federal interest in this case because the Controlled Substances Act does not create a private right of action. The *Mallory* and *PharmaCann Penn* cases quoted above debunk this argument by illustrating why cases arguing the effect of the Controlled Substances Act implicate strong federal interests regardless of the fact that the statute does not provide a private right act. In fact, because it is a criminal statute, it would make little sense for the Controlled Substances Act to create a private right of action. In any event, the Supreme Court holds that the absence of a private right of action is not dispositive of a substantial federal interest. *See Grable*, 545 U.S. at 319-20 ("Given the absence of threatening structural consequences and the clear interest the Government, its buyers, and its delinquents have in the availability of a federal

---

[2] *See, e.g.*, *Boulds v. Chase Auto Fin. Corp.*, 266 S.W.3d 847, 851 (Mo. Ct. App. 2008).

forum, there is no good reason to shirk from federal jurisdiction over the dispositive and contested federal issue at the heart of the state-law title claim.").

The facts in this case and authorities on disputes involving the Controlled Substances Act demonstrate that a substantial federal issue exists in this case. The Court should therefore find that the third requirement is satisfied.

## IV. The Federal-State Balance Will Not be Upset by the Exercise of Federal Jurisdiction

The final factor also favors federal jurisdiction. Congress has long been concerned with the subject of industrial hemp and active in crafting legislation to remove hemp-derived CBD products containing trace amounts of THC from regulation under the Controlled Substances Act. Plaintiff's attempted end-run of this effort goes against the balance of federal-state interests in this area and weighs in favor of federal jurisdiction. *See PharmaCann Penn*, 318 F. Supp. 3d at 714 ("Congressional legislation on marijuana—both successfully enacted and merely proposed—further demonstrates Congress's desire to make drug law a federal issue.").

This unique fact pattern involves an emerging area of the law, and accepting federal jurisdiction in this case is not likely to lead to a flood of litigation in federal courts because state law tort claims will rarely turn on application of the Controlled Substances Act. This also favors the exercise of federal jurisdiction, which will not upset the federal-state balance. *See id.* at 713-14 ("The Court is hard-pressed to imagine another case in quite this same posture. Therefore, hearing this case in a federal forum will not disrupt the federal-state balance approved by Congress."); *see also Dooley*, 39 F. Supp. 3d at 988 ("The regulations and requirements of the safety and effectiveness of a Class III, PMA device belong under the scope of federal question jurisdiction. Therefore, the Court believes that the state-federal balance remains untouched by the conferral of federal jurisdiction over Plaintiff's claims.").

Plaintiff argues that the length of pre-removal proceedings in state court weighs against the exercise of federal jurisdiction, but this overlooks the fact that it was Plaintiff's deliberate decision to amend his Petition to add claims against Evolution involving the legality of CBD products under the Controlled Substances Act that opened the door to federal jurisdiction. Plaintiff can hardly complain about the removal of this case under those circumstances, and the case he cites does not aid his argument because it involved bad faith litigation conduct, including the removal of the case in the middle of an evidentiary hearing in state court. *See City of Manchester v. Doctor Johns, Inc.*, No. 4:19CV02613 SRC, 2019 WL 4643975, at *5 (E.D. Mo. Sept. 24, 2019).

Because the exercise of federal jurisdiction will not upset the federal-state balance, the Court should find that the final requirement is satisfied.

## IV.  Even if the Court Grants the Motion to Remand, the Request for Attorneys' Fees Should be Denied

Plaintiff requests fees and expenses incurred as a result of improper removal pursuant to 28 U.S.C. § 1447(c). If the Court denies the motion to remand, it follows that this request should also be denied. But even if the Court grants the motion to remand, it still should not award fees or expenses to Plaintiff.

"[A]bsent unusual circumstances, an award is appropriate 'only where the removing party lacked an objectively reasonable basis for seeking removal. . . . [W]hen an objectively reasonable basis exists, fees should be denied.'" Fisher v. Spire Mo., Inc., No. 4:18-00869-NKL, 2019 WL 927728, at *3 (W.D. Mo. Feb. 26, 2019) (quoting Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005)). Here, the arguments and authorities outlined above demonstrate an objectively reasonable basis for asserting federal jurisdiction under the substantial-federal-question doctrine. Even in cases where courts have disagreed that a substantial federal question exists and a motion

for remand is granted, fee awards have been denied. *See, e.g.*, *Roller v. Glazer's Distribs. of Mo.*, No. 4:16cv0022 CDP, 2016 WL 2609804, at *4 (E.D. Mo. May 6, 2016) ("Although the defendants' argument that a question of federal law was involved was not ultimately persuasive, they did not lack an objectively reasonable basis for making the argument. Therefore, I will deny [the] motion for attorney fees."). This Court should make a similar ruling in this case if it ultimately decides to grant the motion to remand.

## Conclusion

For the foregoing reasons, Defendant Evolution E-Liquids, LLC respectfully requests that the Court deny Plaintiff's Motion to Remand in all respects.

Respectfully submitted,

**THE PORTO LAW FIRM**

By: */s/ Nicholas J. Porto*
Nicholas J. Porto     MO #56938
1600 Baltimore, Suite 200A
Kansas City, Missouri 64108
Telephone:  816.463.2311
Facsimile:   816.463.9567
nporto@portloaw.com

-and-

**SHANK & MOORE, LLC**

By: */s/ Stephen J. Moore*
Stephen J. Moore     MO #59080
1968 Shawnee Mission Pkwy, Suite 100
Mission Woods, Kansas 66205
Telephone:  816.471.0909
Facsimile:   816.471.3888
sjm@shankmoore.com

*Attorneys for CBD American Shaman, LLC and Evolution E-Liquids, LLC*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the foregoing document was filed this 7th day of July, 2020, via the Court's CM/ECF system, which shall send electronic notice of the same to the following counsel of record:

**Counsel for Plaintiff Christopher Barackman**
Martin Meyers
Candice Johnson
THE MEYERS LAW FIRM
503 One Main Plaza
4435 Main Street
Kansas City, Missouri 64111
mmeyers@meyerslaw.com
cjohnson@meyerslaw.com

**Counsel for Defendant Rebecca Perdieu**
Christopher F. Pickering
The Pickering Law Firm, P.A.
130 N. Cherry, Suite 100
Olathe, Kansas 66061
cfp@pickeringlawfirm.com

                                            */s/ Stephen J. Moore*
                                            Attorney for Defendants